IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDDIE DARRELL BENOIST, )
)
          Plaintiff, )
)
v. ) 1:17CV597
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
          Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Eddie Darrell Benoist ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 1, 2012, alleging a disability onset date of August 29, 2012 in both applications. (Tr. at 26, 219-33.)[1] Plaintiff's applications were denied initially (Tr. at 95-126, 163-68) and upon reconsideration (Tr. at 127-62, 173-90). Thereafter,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 191-92.) Plaintiff, Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on October 22, 2014. (Tr. at 26.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through May 26, 2015, the date of the administrative decision. (Tr. at 43.) On September 29, 2016, the Appeals Council denied Plaintiff's request for review of this decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-17.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 29, 2012, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. (Tr. at 28.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

diabetes mellitus with foot neuropathy, arthritis, and a learning disability[.]

(Tr. at 29.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 29-33.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform medium work with the following additional limitations:

> He can frequently climb ramps, stairs, ladders, ropes, and scaffolds; and can frequently balance. He can frequently reach overhead bilaterally. He can understand, remember, and perform work tasks at GED Reasoning Level 02. He can perform goal-oriented rather than production-oriented work (e.g., the

5

performance of work tasks in allotted time is more important [than] the pace at which the work tasks are performed). He can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties). He can perform work in which independent goal setting or planning occurs no more than frequently.

(Tr. at 33.) Based on the RFC determination, the ALJ found at step four of the analysis that Plaintiff was unable to perform any of his past relevant work. (Tr. at 40.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 41-42.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 42-43.)

Plaintiff now challenges the ALJ's listing analysis at step three. Specifically, Plaintiff contends that the ALJ erred in concluding that Plaintiff's mental impairment did not meet Listing 12.05C (Intellectual Disability), 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05C (hereinafter "Listing 12.05C"). He argues that substantial evidence of his low IQ scores and deficits in his adaptive functioning levels support a finding of mental retardation and, therefore, disability, at step three of the sequential analysis. At the time of the ALJ's decision, Listing 12.05C provided as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .

6

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
> or other mental impairment imposing an additional and significant work-related
> limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.[4] In other words, a claimant must demonstrate three elements to meet Listing 12.05C: (1) deficits in adaptive functioning manifested before age 22 ; (2) a valid IQ score of 60 through 70; and (3) another severe impairment. See Luckey v. U.S. Dept. of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989).

In the present case, the parties agree that Plaintiff established the second and third prongs of the Listing. At least some of Plaintiff's IQ scores meet the Listing's IQ requirement, while his diabetes and arthritis meet the additional severe impairment requirement. Therefore, the sole issue before the Court is whether substantial evidence supports the ALJ's finding that Plaintiff did not manifest deficits in adaptive functioning before age 22. See Hancock v.

---

[4] The listings have been amended, effective January 17, 2017. See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 2.05; 81 Fed. Reg. 66161, 66167 (Sept. 26, 2016); see generally 81 Fed. Reg. 66138-01 (Sept. 26, 2016). The Court has reviewed the ALJ's decision based on the version of Listing 12.05 in effect at the time of the ALJ's decision. Therefore, all references herein are to the version of Listing 12.05 and related regulations in effect at the time of the ALJ's decision. See 81 Fed. Reg. 66138-01 (Sept. 26, 2016) ("[T]hese final rules will be effective on January 17, 2017. . . . This means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

Under the new rules, Listing 12.05C no longer exists, and Plaintiff would instead be required to satisfy the 3 paragraphs of Rule 12.05(B). Under Rule 12.05(B), Plaintiff's IQ scores would satisfy Paragraph 1, but Plaintiff would also be required to show the following under Paragraph 2:
> Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> a. Understand, remember, or apply information (see 12.00E1); or
> b. Interact with others (see 12.00E2); or
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
> d. Adapt or manage oneself (see 12.00E4)

Id. Plaintiff would also have to show under Paragraph 3 that the disorder began prior to age 22. Id.

Astrue, 667 F.3d 470, 475 (4th Cir. 2012) ("The ALJ found no deficits in adaptive functioning generally and also found that no deficiency manifested itself before the age of 22. Either finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that Hancock did not satisfy" the requirement of deficits in adaptive functioning manifested before age 22).

"Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 2012 WL 580239 (4th Cir. Feb. 23, 2012). Under the regulatory provisions applicable in this case, the Social Security Administration ("SSA") "does not expressly define 'deficits in adaptive functioning' or specify the degree of deficit required (mild versus significant, for example), whether deficits must exist in one, two, or more categories of adaptive functioning, or what methodology should be used to measure deficits in adaptive functioning." Blancas v. Astrue, 690 F. Supp. 2d 464, 476-477 (W.D. Texas 2010). However, the regulations do provide definitions of social functioning and activities of daily living among their general mental disorder provisions. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C). Under those provisions, "[s]ocial functioning refers to [a claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." § 12.00(C)(2). It may be assessed by evaluating a claimant's ability "to get along with others, such as family members, friends, neighbors, grocery clerks, landlords or bus drivers." Id. Similarly, a claimant's practical skills can be evaluated by assessing her "adaptive activities[,] such as cleaning, shopping, cooking, taking public transportation, paying bills,

maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." § 12.00(C)(1); see also Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. April 16, 2012) (unpublished). The factfinder may consider "the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." 20 C.F.R. part 404, subpt. P, Appendix 1, § 12.00(C)(1). Limitations in concentration, persistence, or pace, particularly in the workplace, may also impact determinations. 20 C.F.R. part 404, subpt. P, Appendix 1, § 12.00(C)(2)-(3). Finally, poor school performance often provides the best, and in many cases the only, direct evidence of adaptive functioning deficits before age 22. See Jackson v. Astrue, 467 F. App'x at 218.

In the present case, the ALJ found that, despite Plaintiff's low IQ scores, the "record as a whole does not support intellectual disability as an impairment." (Tr. at 32.) The ALJ then recounted the following evidence in support of his conclusion:

> [Plaintiff] testified that he has a ninth grade education and has not obtained a GED. He further stated that he could read and write his name, and can read street signs, but not read a newspaper. He can make change, but cannot otherwise add and subtract. He stated that he took a written driver's license tests but that he copied his cousin's test paper as they were taking the same test at the same time.
>
> The record contains copies of school records that include a reference to a 1972 Slosson IQ score of 85. There is also an apparent California Test of Mental Maturity score from 1975, reflecting a 63 IQ. However, his last grade reports show mostly B's and C's, with one D in the third reporting period. There are also some notes showing that some of [Plaintiff's] poor academic progress in earlier grades was due to his poor attitude and lack of effort.
>
> The undersigned observes that [Plaintiff] has worked steadily since 1975-76, with a number of years at or above SGA levels. Furthermore, testimony from the vocational expert indicated that at least some of this work was at the semi-skilled level. [Plaintiff] has a driver's license. During the consultative

9

> psychological examination, [Plaintiff] reported previous work in the textile industry as a fixer and sewing machine mechanic.
>
> At the state agency review, both Dr. Skoll and Dr. Fulmer disagreed with the consultative examination diagnosis of mental retardation, concluding that the evidence was insufficient to support life-long intellectual disability and that the evidence was more consistent with a learning disability. The undersigned finds these opinions persuasive in light of the record as a whole and adopts these findings herein.

(Tr. at 32-33.)

Plaintiff now argues that substantial evidence fails to support the ALJ's analysis of Plaintiff's adaptive functioning and, in particular, the State agency psychologists' opinions on which the ALJ relied. (Pl.'s Br. [Doc. #12] at 6-7.) In making this argument, Plaintiff contends that the following evidence supports his assertion that he suffered deficits in adaptive functioning prior to age 22: "illiteracy; inability to do simple math; a limited and specially-modified education; and . . . the diagnosis of mental retardation, which includes in its criteria deficits in adaptive functioning." (Id. at 7.) However, Plaintiff's school records, which serve as the primary basis for his challenge, fail to support the level of intellectual impairment he alleges.

As the ALJ's decision reflects, Plaintiff earned mainly B's and C's in ninth grade, his final year of school. (Tr. at 313.) Moreover, none of his school records indicate that he was in anything other than mainstream classes. (See Tr. at 313-27.) Despite Plaintiff's assertion that he was unable to do even simple math, he took and passed Algebra I in ninth grade. Similarly, he earned a 78 and a 90, respectively, in his two semesters of freshman English, and a 93 and an 85 in his first two semesters of freshman Science. (Tr. at 313.) The records similarly reflect that he earned B's and C's the year prior in eighth grade. (Tr. at 327.) Plaintiff's

fifth grade teacher did note that he had "difficulty with reading." However, she also noted, like all of Plaintiff's teachers, that he put in minimal effort and had "the ability to do much better work if he would only apply himself." (Tr. at 317.) Plaintiff's failure to do his work, along with extensive disciplinary issues, were cited as the basis for retaining him in second grade. (Id.) It does not appear that he repeated any other grades. As the ALJ also noted, Plaintiff's IQ scores, as measured during his school years, varied widely, with nine scores ranging from 61 to 90, again throwing the exact extent of his intellectual limitations into doubt. (Tr. at 33, 313, 315-16.)

Plaintiff's argument also ignores the fact that the ALJ relied on more than the State agency opinions in assessing adaptive functioning. Notably, the ALJ specifically found "these opinions persuasive *in light of the record as a whole.*" (Tr. at 33) (emphasis added). The record in question included Plaintiff's school records, discussed at length above, as well as evidence of Plaintiff's long, successful work history, which included semi-skilled work. (Tr. at 33, 82, 85-87, 251-52.) Such work is generally viewed as inconsistent with the level of intellectual impairment Plaintiff now alleges. See, e.g., Justice v. Comm'r of Soc. Sec., 515 Fed. App'x 583, 587 (6th Cir. 2013) (finding "a lengthy work history, including a variety of semiskilled and unskilled positions" inconsistent with the adaptive functioning deficits required to meet Listing 12.05C); Hines v. Astrue, 317 Fed. Appx. 576, 579 (8th Cir. 2009) (approving the ALJ's characterization of the plaintiff's prior work in a semi-skilled job as inconsistent with mental retardation for purposes of Listing 12.05C). The ALJ explained that he discounted the consultative examiner's diagnosis of mental retardation in light of *all* of the above evidence,

not the State agency conclusions alone. (Tr. at 33.) In addition, in analyzing Plaintiff's mental impairments at step two, the ALJ found that:

> In activities of daily living, [Plaintiff] has mild restriction. The record does not reflect any limitation in terms of [Plaintiff's] ability to feed and dress himself, or care for basic hygiene. He has previously reported being able to do some household chores and go shopping in the community. While [Plaintiff] has some restrictions in this functional area, the record shows that the restrictions do not rise to the level that they meaningfully interfere with his capacity of initiating and participating in daily living activities independent of supervision or direction.
>
> In social functioning, [Plaintiff] has mild difficulties. The record does not reflect any problems in this area and the report from a 2012 psychological consultative examination concludes that he was capable of getting along with others and dealing with routine job stress. The record shows that the impairment does not rise to the level that it significantly interferes with his capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.
>
> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. The psychological consultative examination noted that [Plaintiff] was able to concentrate briefly during testing and that he worked accurately but slowly. While the record shows that the impairment interferes with his ability to sustain focused attention and concentration to the extent that it hinders him for the timely completion of tasks commonly found in work settings, but does not do so in a marked manner.

(Tr. at 31.) Plaintiff does not challenge this portion of the ALJ's step two determination, and these findings further support the ALJ's determinations with regard to Plaintiff's adaptive functioning.

In short, the ALJ properly analyzed, under the strictures of Listing 12.05C, whether Plaintiff met his burden of demonstrating deficits in adaptive functioning, initially manifested prior to age 22, and concluded that he did not. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Summary Judgment [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 26th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge